UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDA J. MILEY,

    Plaintiff,

  v.

JACOB J. LEW, SECRETARY,
U.S. DEPARTMENT OF TREASURY

    Defendant.

Civil Action No. 12-1406 (CKK)

## MEMORANDUM OPINION
(May 19, 2014)

Plaintiff Linda Miley has filed suit challenging an administrative decision of the United States Department of Treasury's Office of D.C. Pensions denying her claim for a refund of funds contributed to her retirement plan as a teacher in the District of Columbia Public Schools. Presently before the Court are Defendant's [34] Cross-Motion for Summary Judgment and Plaintiff's [35] Motion for Declaratory Judgment. Upon consideration of the parties' submissions,[1] the applicable authorities, and the entire record, the Court shall GRANT Defendant's [34] Cross-Motion for Summary Judgment and DENY Plaintiff's [35] Motion for Declaratory Judgment.

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Def.'s Cross-Mot. for Summ. J., ECF No. [34] ("Def.'s Mot."); Pl.'s Mot. for Decl. J., ECF No. [35] ("Pl.'s Mot."); Def.'s Mem. of P. & A. in Opp'n to Pl.'s Mot. for Decl. J. and Reply in Further Supp. of Def.'s Cross-Mot. for Summ. J., ECF No. [40] ("Def.'s Opp'n"); Pl.'s Mem. of P. & A. in Opp'n to Def.'s Cross-Mot. for Summ. J., ECF No. [41] ("Pl.'s Opp'n"); Pl.'s Local Rule 7(h)(1) Stmt. of Disputed Facts, ECF No. [41-1] ("Pl.'s Facts"); Pl.'s Reply to Def.'s Mem. in Opp'n to Pl.'s Mot. for Decl. J., ECF No. [43] ("Pl.'s Reply"); Def.'s Reply to Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J., ECF No. [44] ("Def.'s Reply"). In an exercise of its discretion, the Court finds that holding oral argument on the instant motions would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

Under Title XI of the Balanced Budget Act of 1997, the Federal Government and the District of Columbia share responsibility for the District of Columbia Teachers' Retirement Plan ("the Plan"). *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251. Administration of the Plan is provided by the District of Columbia Retirement Board ("DCRB"), an independent agency of the District of Columbia Government. *See* D.C. Code § 1-809.01. The U.S. Department of Treasury ("Treasury") is responsible for funding Plan benefits based on service performed on or before June 30, 1997. *See id.* § 1-701 *et seq.* Plan participants who are denied benefits may request reconsideration from DCRB. 31 C.F.R. § 29.404(b)-(d). In addition, participants with service accrued on or before June 30, 1997, and whose claim for a Federal Benefit Payment has been denied by DCRB through the reconsideration process may appeal to Treasury's Office of D.C. Pensions ("ODCP"). *Id.* § 29.405. Treasury's decision represents a final agency action, and a party may seek judicial review of that decision by filing suit in this District. *Alston v. Lew*, 950 F.Supp.2d 140, 141 (D.D.C. 2013).

With regard to the specific facts of this case, Plaintiff Linda Miley ("Plaintiff" or "Miley") was hired pursuant to a temporary appointment by the District of Columbia Public Schools ("DCPS") on September 1, 1965. AR 0020. She continued as a temporary appointment until November 1, 1967. *Id.* In 1965, DCPS temporary teachers were subject to coverage under the federal Civil Service Retirement System ("CSRS"), a defined benefit contributory retirement system distinct from the Plan. *Id*. *See also* 5 U.S.C. §§ 8331(1)(G); 8332 *et seq*. The statutory language of the Plan at the time defined the term "teacher" to "include all teachers *permanently* employed by the Board of Education in the public day schools of the District of Columbia . . . ." D.C. Code § 31-733 (1961) (emphasis added). AR 0020, 0082. Plaintiff's Individual Retirement

Record was maintained by the United States Office of Personnel Management ("OPM"), which provided administration of retirement benefits under CSRS to DCPS personnel at the time. AR 0020. These records show Plaintiff's service history and contributions to CSRS between September 1, 1965 and October 31, 1967. *Id.* Plaintiff's contributions to CSRS during this period totaled $797.27. *Id.* She requested a refund of CSRS contributions on or about December 18, 1967, and on January 17, 1968, OPM authorized a refund in the amount of $821.79, which included accrued interest. *Id.* at 0020, 0086-0087.

On or about November 1, 1967, DCPS converted Plaintiff to a probationary appointment. *Id.* at 0020. After completing an additional two-year probationary period, Plaintiff became a permanent DCPS teacher on or about November 1, 1969. *Id.* Plaintiff served in this capacity until July 3, 1973, at which point she resigned. Once Plaintiff became a probationary teacher, she began participating in and making contributions to the Plan. *Id.* at 0021. When Plaintiff began participating in the Plan, she did not deposit the contributions made to CSRS into the Plan. *Id.* at 0020, 0089-0090.

Plaintiff resigned from DCPS in July 1973 for health reasons. *Id.* at 0021. At that time, the District's Office of Pay and Retirement Services ("OPRS") was the Plan's benefits administrator. *Id.* OPRS used Form FA 103 (Individual Retirement Record) and Form DA-33 (Separation Retain Record) in the ordinary course of business in processing a District employee's refund of retirement contributions from the Plan. *Id.* Form FA 103, dated August 16, 1973, reflects a refund of Plaintiff's employee contributions to the Plan totaling $3,309.53, for contributions made from November 1, 1967 to July 3, 1973. *Id.* at 0021, 0113. Form DA-33, also dated August 16, 1973, reflects the same refund. *Id.* at 0021, 0115. Both documents state:

3

"Voucher Prepared & Paid on Audit # 021481." *Id.* at 0021, 0113-0115. Plaintiff denies that she ever received this refund. *Id.* at 0019.

DCPS rehired Plaintiff on April 15, 1974. *Id.* at 0021. Upon reinstatement, there is no record of Plaintiff making additional contributions to the Plan beyond what was deducted from her salary by D.C. law. *Id.* at 0021, 0117-0118. By letter dated June 22, 2010, DCPS issued Plaintiff a notice of involuntary separation on the grounds that she had not timely submitted documentation establishing compliance with District licensure requirements. *Id.* at 0021-22, 0120. Following this notice, Plaintiff filed for, and was granted, early involuntary retirement, effective August 13, 2010. *Id.* at 0022, 0122-0125. Following Plaintiff's retirement, the DCRB, as the Administrator of the Plan, calculated Plaintiff's retirement benefit on or about June 22, 2010. The retirement calculation reflected creditable service from April 15, 1974 to August 13, 2010. *Id.* at 0022, 0125-0126.

By letter dated July 30, 2010, Plaintiff requested that DCRB reconsider the June 22, 2010 benefit calculation, stating that she had never received a refund of her employee contributions from 1967 to 1973, and should therefore be accorded service time under the Plan for this period. *Id.* at 0022, 0132. DCRB subsequently denied this reconsideration request, concluding that the existence of a Form 103 and Form DA-33 reflected the issuance of a refund of Plan contributions for this period on August 16, 1973. *Id.* at 0134-0137.

Plaintiff appealed DCRB's denial of her reconsideration request to Treasury's ODCP on October 1, 2010, reiterating her claim that she had not received a refund of Plan contributions of $3,309.53 on August 16, 1973. *Id.* at 0027. Plaintiff further challenged DCRB's calculation of her dates of employment, stating that based on a DCPS March 17, 2009 Human Resources Sheet, she was employed by DCPS starting on September 1, 1965 (not November 1, 1967) and was

4

therefore entitled to two additional years of service. *Id.* at 0027-0040. Treasury denied Plaintiff's appeal on both claims in a decision dated February 28, 2012. *Id.* at 0042-0058.

On August 24, 2012, Plaintiff filed suit in this Court, challenging ODCP's February 28, 2012 decision. *See* Compl., ECF No. [1]. On March 13, 2013, the Court granted a joint motion to remand ODCP's February 28, 2012 decision to Treasury in order to consider relevant new evidence recently obtained. *See* Order, ECF No. [18]. According to the parties' [17] Joint Motion to Stay, this new evidence consisted of the following:

> ODCP has obtained Plaintiff's personnel records from the Office of Personnel Management regarding her contributions to the Civil Service Retirement System during the first two years of her initial employment with DCPS and has learned additional information about the internal processes of the District of Columbia's Office of Pay and Retirement services, the Plan benefits administrator at the time of Plaintiff's pre-1974 employment.

On April 1, 2013, after consideration of the new evidence, Treasury again denied Plaintiff's appeal. AR 0019-0024. Treasury concluded that the existing records used in the ordinary course of business in 1973 – Form FA 103 and Form DA-33 – were sufficient to indicate that Plaintiff had received her refund. *Id.* at 0022-0023. With regard to Plaintiff's claim that DCRB erred in calculating Plaintiff's service time, Treasury concluded that Plaintiff's service history in the Plan was properly calculated. *Id.* at 0023-0024. While Plaintiff was initially hired by DCPS on September 1, 1965, she was a temporary appointment at that time and was not eligible to participate in the Plan until she became a full-time teacher on November 1, 1967, at which time she began making contributions to the Plan. *Id.*

In response, Plaintiff sent a letter to Treasury dated May 24, 2013 in which she reiterated her contention that she did not receive a refund of contributions to the Plan in 1973. *Id.* at 0005-0017. Treasury responded on June 11, 2013, and "affirmed" the April 1, 2013 decision, concluding that based on the available records, Plaintiff did receive a refund of contributions

5

from 1967 to 1973. *Id.* at 0002-0003. Plaintiff subsequently filed her [26] Amended Complaint in this Court on July 22, 2013. The parties then filed a revised [29] Administrative Record and their cross-motions for judgment, which are now ripe for review.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[] does not apply because of the limited role of a court in reviewing the administrative record. . . . Summary judgment is [] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F.Supp.2d 135, 142 (D.D.C. 2010).

A reviewing court can set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), (C), (D). An agency's decision may be arbitrary or capricious if any of the following apply: (i) its explanation runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise; (ii) the agency entirely failed to consider an important aspect of the problem or issue; (iii) the agency relied on factors which Congress did not intend the agency to consider; or (iv) the decision otherwise constitutes a clear error of judgment. *Motor Vehicle Mfrs. Ass'n of*

6

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *accord Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1118 (D.C. Cir. 2010). This standard of review is highly deferential to the agency; a court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached had the question arisen in the first instance in judicial proceedings." *Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 422 (1983) (internal citation omitted).[2]

Plaintiff, as the party challenging the agency action, bears the burden of proof. *Abington Crest Nursing & Rehab. Ctr. v. Sebelius*, 575 F.3d 717, 722 (D.C. Cir. 2009) (citing *City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C. Cir. 2002)). In assessing the merits of Plaintiff's challenge, the Court begins with the presumption that the Commission's actions were valid. *Grid Radio v. Fed. Commc'ns Comm'n*, 278 F.3d 1314, 1322 (D.C. Cir. 2002). So long as the agency decision has some rational basis, the Court is bound to uphold it. *Hosp. of Univ. of Penn. v. Sebelius*, 634 F.Supp.2d 9, 13 (D.D.C. 2009) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

---

[2] Plaintiff asserts that the appropriate standard of review here is whether the agency's decision was "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). Yet pursuant to the APA, the substantial evidence standard applies only "in a case subject to sections 556 and 557 of [the APA] or otherwise reviewed on the record of an agency hearing provided by statute." *Id.* Plaintiff has not argued that ODCP's proceedings fall within any of these categories. Rather, "[i]f an agency acts through informal adjudication or informal rulemaking, and its organic act does not subject its findings to substantial evidence review, the APA authorizes judicial review of the agency's findings of fact under the arbitrary and capricious test." R. PIERCE, S. SHAPIRO & P. VERKUIL, ADMINISTRATIVE LAW AND PROCESS 388 (5th ed. 2009). The Court notes that in previous cases reviewing appeals from the Treasury Department's ODCP, courts in this district have applied the arbitrary and capricious standard. *See Alston*, 950 F.Supp.2d at 143. In any case, the distinction between the two tests is mostly academic, *see Assoc. of Data Processing Service Orgs., Inc. v. Board of Governors*, 745 F.2d 677, 684 (D.C. Cir. 1984) (Scalia, J.) (noting "that the distinction between the substantial evidence test and the arbitrary and capricious test is 'largely semantic'"), and the Court would reach the same result in this case even if it applied the substantial evidence standard.

## III. DISCUSSION

In this case, Plaintiff is seeking retirement contributions she made as a DCPS teacher. Upon administrative review of Plaintiff's claims, the Treasury Department determined that Plaintiff's contentions were meritless. Yet Plaintiff continues to press her claims that she never received these refunds and asks this Court for a declaratory judgment in her favor. First, Plaintiff asserts that she did not receive a refund of her contributions to the Plan for the years 1967 to 1973 and argues that Defendant's existing records reflecting this refund are insufficient to corroborate the refund. Second, Plaintiff asserts that her creditable service under the Plan began prior to November 1, 1967, and that she never received a refund for these contributions.

Regarding Plaintiff's first claim, Treasury relies on its records stating that the refund sought by Plaintiff was processed in 1973. On this basis, it argues that it properly denied Plaintiff's administrative appeal. Having reviewed the administrative record, the Court concludes that Treasury's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

In reaching its decision, Treasury relied on two forms, Form FA 103 (Individual Retirement Record) and DA-33 (Separation Retain Record), both of which state that a "voucher [was] prepared and paid" on August 16, 1973. AR 0113-0115. These forms were used by OPRS in the ordinary course of business during this time period in processing a District employee's refund of retirement contributions from the Plan. *Id.* at 0021. According to Treasury:

> In 1973, the District's Office of Pay and Retirement Services (OPRS) was the Plan's benefits administrator. When an employee resigned, it was OPRS's practice to generate from the computerized payroll system two records: a Separation Retain Record (containing the balance of employee contributions) and a Form FA 103/Individual Retirement Record (reflecting salary history and year-by-year contributions to the Plan). When issuing a refund, OPRS initiated payment by completing a check voucher that included the teacher's name, address, and the amount of the refund. Each check voucher had an audit number.

> OPRS personnel wrote this audit number on the Separation Retain Record and Form FA 103, along with the date of the check voucher.
>
> Your Form FA 103/Individual Retirement Record covering the time period from November 1, 1967, when you became a probationary teacher, to July 3, 1973, when you resigned, reflects employee contributions to the Plan totaling $3,309.53. Your Separation Retain Record reflects the same total. Importantly, both documents state: "Voucher Prepared & Paid on Audit # 021481" with a corresponding date of August 16, 1973.

*Id.* Based on the fact that government officials are entitled to a "presumption of regularity" in the performance of its duties, and the fact that these records were issued and maintained in the ordinary course of business, Treasury concluded that this refund was issued. "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)). This presumption extends to government-produced documents, such as the forms relied upon by Treasury here. *See Riggs Nat'l Corp. v. Comm'r*, 295 F.3d 16, 21 (D.C. Cir. 2002) (holding that "an official tax receipt" of a foreign government "is entitled to a presumption of regularity").

In *Alston v. Lew*, 950 F.Supp.2d 140 (D.D.C. 2013), faced with almost identical facts, Judge James E. Boasberg concluded that Treasury's denial of the plaintiff's appeal was not arbitrary and capricious and awarded summary judgment to Defendant. In that case, the plaintiff, also a former DCPS teacher, claimed that she had never received a refund of Plan contributions from 1970 to 1976. *Id.* at 142. Treasury denied her appeal, finding that the existence of a Form 103 and Form DA-33 – the same forms relied upon here – reflected that the amount sought by plaintiff had already been paid. *Id.* at 144. Reviewing this decision, Judge Boasberg found that Treasury had articulated a satisfactory explanation for rejecting plaintiff's

claim, noting that "[s]trong support for the Treasury's decision lies in the two documents that the Board was able to locate. These two hard cards contain very specific information – namely, particular voucher numbers and actual dates on which they were issued. The information on the two cards, moreover, was consistent. Based on the practices of the District in processing requests for refunds at the time, Treasury sensibly determined that the refund had been issued." *Id.* at 145. *Alston* also concluded that in making its decision, Treasury was entitled to rely on a "presumption of regularity accorded to the government's actions." *Id.* The same logic underlies Treasury's decision here. In rejecting Plaintiff's request for reconsideration, Treasury relied on the existence of a Form 103 and Form DA-33 indicating that the refund had been made. As in *Alston*, these documents contain particular voucher numbers and list dates on which they were issued, and the information contained in the two documents is consistent.

Plaintiff's attempts to distinguish *Alston* are unavailing. Plaintiff first argues that *Alston* is only persuasive, not binding precedent. Pl.'s Mot. at 6. While this is true, the Court is nevertheless persuaded by *Alston*'s reasoning in addressing an almost identical factual scenario. Second, Plaintiff argues that the identical claim in *Alston* is indicative of chronic problems in processing DCPS retirement refunds, undermining the presumption of regularity here. *Id.* Yet *Alston* rejected similar contentions as speculation. There, plaintiff argued "that because other employees have raised similar concerns, the Court should find that there are sufficient 'administrative problems' to rebut the presumption that the District complied with its own procedures in processing refunds." *Alston*, 950 F.Supp.2d at 145. Judge Boasberg rebuffed this argument as "speculation" that was "not sufficient evidence to rebut the presumption." *Id.* The Court agrees with this reasoning. Plaintiff has failed to cite a single instance where DCPS

provided the forms at issue as here, yet failed to issue the refund. The existence of similar, but also unsuccessful, claims does not persuade the Court to overturn the agency's decision.

The remaining evidence Plaintiff submits to undermine Treasury's decision is unpersuasive. First, Plaintiff points to the fact that she never received a Form 1099-MISC from the Internal Revenue Service ("IRS") for the refunded amount, which she claims shows that the refund was never actually issued. Pl.'s Mot. at 7. Yet Treasury's April 1, 2013 decision considered and rejected this argument. As stated in that decision, prior to 2000, employee contributions to the Plan were made on a post-tax basis. AR 0023. Accordingly, since Plaintiff's contributions to the Plan in the years leading up to 1973 had already been taxed, there was no need for the IRS to issue her a Form 1099-MISC for the refunded amount, and thus no form was issued.

Second, Plaintiff argues that Form 103 and Form DA-33 are confusing and inadequate to show that Plaintiff's refund was provided, as they do not directly state that Plaintiff received her pre-1974 contributions. Pl.'s Mot. at 6. Plaintiff also argues that these forms are inadequate because Defendant has not provided the voucher referenced in the forms. Pl.'s Opp'n at 5. Moreover, Plaintiff attempts to raise doubts as to the credibility of these documents by noting that key portions stating that a voucher was prepared and paid are handwritten and do not bear signatures. *Id.* On this point, the Court notes that the existence of these same two forms proved sufficient in *Alston* to affirm Treasury's decision. Moreover, as discussed, the two forms in the record here contain all of the information highlighted as relevant by the court in *Alston* and that the forms in that case were similarly unsigned. 950 F.Supp.2d at 142 ("Neither form was signed or provided any other information regarding the refund beyond the voucher number and date."). Similarly the fact that the District "was unable to locate any further documentation, such as the

voucher itself, or the canceled check" did not compel a different result in *Alston*. *Id.* Accordingly, the Court will not conclude that Treasury's reliance on these documents renders its decision arbitrary and capricious.

Third, Plaintiff argues that Treasury has employed a shifting rationale for its decision. Pl.'s Mot. at 7. Initially, Defendant claimed that Plaintiff's Plan contributions prior to 1973 had not vested by her resignation, such that she automatically received a refund. AR 0013. Later, however, Defendant apparently revised this explanation, stating that Plaintiff received a refund not for lack of vesting, but because she had requested one in writing, although Defendant was unable to produce this request. Pl.'s Mot. at 7. Yet this distinction does not render Defendant's reasoning arbitrary and capricious. Regardless of the basis for the refund, Treasury has consistently relied on the existence of the Plan records – Forms 103 and DA-33 – to support its conclusion that a refund *was* issued to Plaintiff.

Fourth, Plaintiff points to a form for processing refunds used by the current Plan administrator, the District of Columbia Retirement Board. This form states that refund requests will be processed in approximately 60-90 days. *Id.* at 7 (citing AR 0009). Because DA-33 and Form 103 are dated only six weeks (or approximately 42 days) after Plaintiff's resignation, Plaintiff argues that the evidence relied upon by Defendant is unreliable and unworthy of credence. Yet, as Defendant notes, the DCRB form reflects *current* retirement refund and rollover procedures rather than the procedures used by a different Plan administrator (OPRS) more than forty years ago. Def.'s Opp'n at 7. Moreover, even if it were relevant to Plaintiff's claim, the DCRB form only states that refund requests will be processed in "approximately 60-90" days. Any variance from these nebulous timeframes is hardly evidence of irregularity sufficient to render Treasury's decision arbitrary and capricious.

Finally, Plaintiff points to the fact that Defendant was able to locate the form Plaintiff used to apply for a refund of her CSRS contributions in 1967. Pl.'s Mot. at 7. Plaintiff argues that Defendant's inability to locate any such application form for the 1973 refund shows that the latter refund was never processed. Yet Defendant rightly points out that during the time at issue, the Plan and CSRS were *separate* retirement systems administered by *different* entities, presumably with differing record retention policies and practices. Def.'s Opp'n at 7. Accordingly, the existence of 1967 CSRS refund application form has no bearing on Plaintiff's claims relating to the processing of her Plan refund.

With respect to Plaintiff's second claim, the Court similarly finds Defendant's action was not arbitrary and capricious. Plaintiff claims that upon the termination of her temporary status in 1967, she never received a refund of her contributions to the retirement benefits plan for the period September 1, 1965 to October 31, 1967. AR 0008. Defendant responds that there was no refund for Plan contributions during this period because Plaintiff made no Plan contributions during this period. As discussed, Plaintiff was a DCPS temporary appointment from September 19, 1965 to November 1, 1967. AR 0062. At that time, temporary appointments were eligible to participate in the Civil Service Retirement System ("CSRS") administered by OPM, *but not* the Plan. Indeed, Plaintiff concedes that temporary teachers accrued retirement benefits through the CSRS system. Pl.'s Facts ¶ 2. Nevertheless, she argues that her creditable service under the Plan began in 1965 or 1966, not 1967. AR 0029. In its April 1, 2013 decision, Treasury concluded that this contention lacked merit, stating "records show that you served during these years under a temporary appointment. During this time, temporary teachers were not Plan participants; they were covered under the Civil Service Retirement Act. Thus, your service during these two years is not creditable towards retirement under the Plan." *Id.* at 0020.

Plaintiff's claim that she never received a refund for her contributions during her temporary service is similarly unavailing. As an initial matter, it is unclear whether Plaintiff is even suing the proper Defendant on this issue. Plaintiff's claim that she never received a refund of her pre-1967 contributions was *not* the subject of the April 1, 2013 Decision. AR 0019-0025. Indeed, Plaintiff did not reference this issue as part of the basis of her appeal before the Treasury, which simply listed the two issues discussed above, i.e. that (1) Plaintiff never received her 1973 refund, and (2) Defendant erred in calculating Plaintiff's dates of service. AR 0027-0029. As Defendant notes in its brief, because OPM administers CSRS, Treasury has no authority to redress such a claim. Def.'s Reply at 1-2. Rather, Defendant contends, the appropriate course for challenging the alleged failure to issue the CSRS refund is a separate claim with OPM. *Id.* at 2.

Nevertheless, apparently in order to assess whether Plaintiff deposited the contributions she made to CSRS into the Plan, Treasury did consult CSRS records as part of its April 1, 2013 decision. AR 0020. Treasury advised Plaintiff that CSRS records indicated that she requested a refund of her CSRS contributions on or about December 18, 1967 and that a refund in the amount of $821.79 was authorized on January 17, 1968. *Id.* at 0021. These documents have been included in the Administrative Record. AR 0086-0087. Plaintiff concedes both that she requested this refund from CSRS, as discussed above, and that OPM documents indicate the refund was processed. However, she argues that she never *received* this refund. Pl.'s Reply at 2-3. Yet Plaintiff provides no evidence to contradict these documents or rebut the presumption of agency regularity. Indeed, as to the 1967 refund there is even more documentary evidence than the 1973 refund, which the Court has already held to be sufficient to survive arbitrary and capricious review. Accordingly, although Plaintiff's claim as to the refund of her pre-1967

14

contributions was likely not properly the subject of review by Treasury, even if it were, Plaintiff has failed to show that this decision was arbitrary and capricious.

## IV. CONCLUSION

In the end, Plaintiff's claims are based on her absence of recollection of events more than four decades ago. In rejecting Plaintiff's claims, Treasury relied on District of Columbia records, maintained in the ordinary course of business, which reflect Plaintiff's employment status and the issuance of refunds of her retirement contributions. Because Defendant examined the relevant and available evidence and articulated a satisfactory explanation for its actions, the Court defers to Defendant's decision and grants summary judgment in Defendant's favor. Accordingly, for the reasons stated herein, the Court GRANTS Defendant's [34] Cross-Motion for Summary Judgment and DENIES Plaintiff's [35] Motion for Declaratory Judgment. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge